IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DAPHNE SNOOK** | : |
| | : |
| **Plaintiff,** | : |
| **v.** | : **4:14-CV-948** |
| | : **(JUDGE MARIANI)** |
| **MIDD-WEST SCHOOL DISTRICT, et al.** | : |
| | : |
| **Defendants.** | : |

## MEMORANDUM OPINION

### I.  INTRODUCTION AND PROCEDURAL HISTORY

Presently before the Court is Defendants Midd-West School District, Victor Abate,

Ronald Wilson, Ronald Hoffman, Shawn Sassaman, Corey Smith, Jeremy Tittle, Sherryl

Wagner, and Nancy Kroh's (hereinafter "School District Defendants") Motion to Dismiss

Plaintiff's Amended Complaint. (Doc. 13).

On May 16, 2014, Plaintiff, Daphne Snook, filed a Complaint in the above-captioned

matter (Doc. 1), and subsequently filed an Amended Complaint on May 22, 2014 (Doc. 4),

naming as defendants the Midd-West School District, Victor Abate, Ronald Wilson, Ronald

Hoffman, Shawn Sassaman, Corey Smith, Jeremy Tittle, Sherryl Wagner, Nancy Kroh, and

Orris Knepp, III. Plaintiff's Amended Complaint sets forth seven counts: Count I, against all

Defendants, for First Amendment Retaliation; Counts II and III, against all Defendants, for

violations of her Procedural Due Process and Substantive Due Process rights under the

Fourteenth Amendment; Count IV, against the Midd-West School District, for a violation of

the Pennsylvania School Code, 24 P.S. §§ 1-101, et seq.; Count V, against the Midd-West School District, for breach of contract; Count VI, against all the individual defendants, for defamation; and Count VII, against all the individual defendants, for abuse of process. (Doc. 4).

School District Defendants moved to dismiss the Amended Complaint. (Doc. 13). Defendant Orris Knepp, III, separately also moved to dismiss the Amended Complaint (Doc. 11), which the Court will address in a separate opinion. The parties have fully briefed the motion, and it is now ripe for decision. For the reasons set forth below, the Court will grant in part and deny in part the School District Defendants' motion.

## II. FACTUAL ALLEGATIONS

Plaintiff's Amended Complaint alleges the following facts:

On August 8, 2011, Snook entered into a written agreement for employment as the Assistant Superintendent for Curriculum, Instruction, and Technology for the Midd-West School District. (Am. Compl., Doc. 4, ¶ 14; see also Employment Contract, Doc. 4, Ex. 1). The contract employed Snook in this capacity for a term of four years, effective August 8, 2010, and ending June 30, 2014. (Doc. 4, ¶ 15; Employment Contract, § 3.00). Pursuant to the terms of the agreement:

The Assistant Superintendent for Curriculum, - Instruction and Technology shall, throughout the term of this Agreement, [is] subject to termination of contract for valid cause for reasons specified under Section 1080 of the Public School Code, including willful violation of any policies of the School District or any provision of this Agreement. Before her dismissal, the School District will provide the Assistant Superintendent for Curriculum, Instruction

2

and Technology with written charges, adequate notice of a hearing and a fair and impartial hearing before the Board of School Directors. If the Assistant Superintendent for Curriculum, Instruction and Technology is found innocent of charges made, the Board of School Directors shall assume responsibility for payment of costs incurred by her in her defense.

(Employment Contract, § 7.00(a)).

In December 2013, Plaintiff became the temporary acting Superintendent after the prior Superintendent of Schools resigned supposedly because Defendants levied charges against him. (Doc. 4, ¶ 17).

Throughout Snook's tenure with the School District, she developed and implemented within the District a nationwide program for individualized reading education entitled "Readers Workshop." (*Id.* at ¶ 18). Plaintiff asserts that this program was "widely successful" in the District but that various factions within the School Board disliked it and worked to have it canceled, "despite the effectiveness of the program and the interest of the general public." (*Id.* at ¶ 19). While the program was active in the District and being debated, Snook issued statements to the press representing that the program was crucial to the successful education of the students in the District. (Doc. 4, ¶ 20). Snook contends these statements were made in her capacity as a private citizen and that certain Defendants[1] became openly antagonistic toward her as a result of her comments. (*Id.*).

On April 1, 2014, Defendants issued an email to all staff members of the District, including Snook, purportedly threatening to terminate anyone who continued to publicly

---

[1] Snook does not identify which Defendants allegedly became antagonistic.

speak in support of the Reading Workshop program. (*Id*. at ¶ 21). Several days later, on April 10, 2014, Defendants suspended Plaintiff without pay. Snook alleges Defendants failed to provide any explanation of the charges against her or an opportunity to respond. (*Id*. at ¶ 22). The following day, Defendants canceled a scheduled teachers planning course for the Reading Workshop program. (*Id*. at ¶ 23). Defendants also issued public statements stating that Plaintiff had been suspended without pay and accusing her of engaging in criminal conduct by breaching the Midd-West School District's email system and illegally monitoring emails. (*Id*. at ¶ 24).

In addition, Defendants contacted the Snyder County District Attorney to press charges against Snook. (Doc. 4, ¶ 25). On May 9, 2014, after conducting an investigation, the District Attorney issued a press release stating that no criminal charges would be filed against Plaintiff due to insufficient evidence that she had engaged in criminal conduct. (*Id*.).

Following her suspension, Plaintiff made statements to the press regarding her continued support of the Reading Workshop program, asserting her innocence with respect to allegations of criminal wrongdoing, and stating that she believed Defendants were retaliating against her for publicly advocating in favor of the Reading Workshop program. (*Id*. at ¶¶ 26, 27).

On May 5, 2014, Snook met with Defendants for a hearing which Plaintiff contends was erroneously labeled as a "Loudermill hearing" for a vote regarding her termination. (*Id*. at ¶ 28). At this meeting, Defendants allegedly did not hold a vote and simply informed

Plaintiff that they intended to vote in approximately two weeks as to whether they would hire

a special prosecutor. (*Id.*). Subsequently, on May 19, 2014, Defendants did meet and

voted to hire Mark Remy as "special counsel" to handle "an unspecified personnel issue."

(*Id.* at ¶ 29).

Snook continues to remain suspended without pay and alleges that she has not

received any hearing or written statement of the charges against her. (*Id.* at ¶ 30).

### III. STANDARD OF REVIEW

A complaint must be dismissed under FED. R. CIV. P. 12(b)(6), if it does not allege

"enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The plaintiff must

aver "factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct.

1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic

recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop.*

*Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555). In other words,

"[f]actual allegations must be enough to raise a right to relief above the speculative level."

*Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013)

(internal citations and quotation marks omitted). A court "take[s] as true all the factual

allegations in the Complaint and the reasonable inferences that can be drawn from those

facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a

cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v.*

*Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation

marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to
> determine the sufficiency of a complaint: First, the court must take note of the
> elements a plaintiff must plead to state a claim. Second, the court should
> identify allegations that, because they are no more than conclusions, are not
> entitled to the assumption of truth. Finally, where there are well-pleaded
> factual allegations, a court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct, the complaint has alleged - but it has not show[n] - that the

pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks

omitted). This "plausibility" determination will be a "context-specific task that requires the

reviewing court to draw on its judicial experience and common sense." *Id*.

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court

must permit a curative amendment unless such an amendment would be inequitable or

futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a defendant
> moves to dismiss it, unless the district court finds that amendment would be
> inequitable or futile, the court must inform the plaintiff that he or she has leave to
> amend the complaint within a set period of time.

*Id*.

## IV. ANALYSIS

### A. The Individual Defendants in their Official Capacity

Defendants contend as a threshold matter that the claims against the individual

defendants in their official capacities must be dismissed in each count wherein the claim

asserted against them is additionally asserted against the School District.[2] (Doc. 15, at 7-

8). Plaintiff fails to address this argument in her brief in opposition. (*See generally*, Doc.

17).

The Supreme Court has emphasized that suits against state actors in their official

capacity "generally represent only another way of pleading an action against an entity of

which an officer is an agent." *Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d

301 (1991) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d

114 (1985)). In other words:

> Suits against state officials in their official capacity therefore should be treated
> as suits against the State. Indeed, when officials sued in this capacity in
> federal court die or leave office, their successors automatically assume their
> roles in the litigation. . . . Personal-capacity suits, on the other hand, seek to
> impose individual liability upon a government officer for actions taken under
> color of state law. Thus, on the merits, to establish personal liability in a §
> 1983 action, it is enough to show that the official, acting under color of state
> law, caused the deprivation of a federal right.

*Id.* Further, previous decisions

---

[2] The individual defendants assert this defense with respect to Counts I, II, III, VI, and VII. Counts
IV and V are only brought against the Midd-West School District. However, Plaintiff does not bring Counts
VI or VII against the Midd-West School District; therefore Defendants' argument here that the individuals
should be dismissed in their official capacity has no application to Counts VI and VII.

make[] clear that the distinction between official-capacity suits and personal-capacity suits is more than a mere pleading device. State officers sued for damages in their official capacity are not "persons" for purposes of the suit because they assume the identity of the government that employs them. By contrast, officers sued in their personal capacity come to court as individuals.

*Id.* at 27 (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304,

2312, 105 L.Ed.2d 45 (1989)) (internal alterations, citations, and quotation marks omitted).

As a result, the claims against the individual defendants in their official capacities in

Counts I, II, and III will be dismissed.

## B. Count I - First Amendment Retaliation

Count I of Plaintiff's Amended Complaint alleges violations of Snook's First

Amendment rights by all defendants due to their "retaliat[ion] against Plaintiff for her

exercise of her free speech rights." (Doc. 4, ¶¶ 31-35).

To establish a *prima facie* case under 42 U.S.C. § 1983, a plaintiff must demonstrate

that: (1) she was deprived of a federal right; and (2) the person who deprived him of that

right acted under color of state law. *Burrella v. City of Philadelphia*, 501 F.3d 134, 139 (3d

Cir. 2007). Section 1983 is not an independent source of substantive rights, but merely

"provides a remedy for deprivations of rights established elsewhere in the Constitution or

federal laws." *Kopec v. Tate*, 361 F.3d 772, 775–76 (3d Cir. 2004). In evaluating a §

1983 claim, a Court must first "identify the exact contours of the underlying right said to

have been violated" and determine "whether the plaintiff has alleged a deprivation of a

constitutional right at all." *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (citing *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 841 n. 5, 118 S.Ct. 1708, 140 L. Ed. 1043 (1998)).

"To state a First Amendment retaliation claim, a public employee plaintiff must allege that [her] activity is protected by the First Amendment, and that the protected activity was a substantial factor in the alleged retaliatory action." *Gorum v. Sessoms*, 561 F.3d 179, 184 (3d Cir. 2009) (citing *Hill v. Borough of Kutztown*, 455 F.3d 225, 241 (3d Cir. 2006)). "The first factor is a question of law; the second factor is a question of fact." *Id.* (internal citations and quotation marks omitted).

"The [Supreme] Court has made clear that public employees do not surrender all their First Amendment rights by reason of their employment. Rather, the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 417, 126 S.Ct. 1951, 164 L. Ed. 2d 689 (2006). If public employees speak in the course of their employment, "the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.* at 421. However, if an employee speaks as a citizen on a matter of public concern, "[t]he question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public." *Id.* at 418.

"To be protected, the speech must implicate a matter of public concern . . . . Speech implicates a matter of public concern if the content, form, and context establish that the

speech involves a matter of political, social, or other concern to the community." *Miller v. Clinton Cnty.*, 544 F.3d 542, 548 (3d Cir. 2008) (citing *Connick v. Myers*, 461 U.S. 138, 146-148, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)).  For example, speech may be a matter of public concern when the speaker seeks to "bring to light actual or potential wrongdoing or breach of public trust" on the part of government officials. *Borden v. Sch. Dist. of Twp. of East Brunswick*, 523 F.3d 153, 170 (3d Cir. 2008) (quoting *Connick*, 461 U.S. at 148).  The speech is not protected if it "constitute[s] merely personal grievances." *Feldman v. Philadelphia Housing Authority*, 43, F.3d 823, 829 (3d Cir. 1994) (citing *Connick*, 461 U.S. at 147).  Nonetheless, speech motivated by private concern may also qualify as protected speech if it "addresses a matter that concerns the public as well as the speaker." *Brennan v. Norton*, 350 F.3d 399, 412 (3d Cir. 2003).

Here, Snook, as Assistant Superintendent and subsequently acting Superintendent, is a public employee.  Her Amended Complaint asserts that her protected speech consisted of publicly speaking "about matters of public concern regarding affairs of public interest, namely her belief in the negative impact that the District's proposed canceling of the Reading Workshop program would have on the students in the District." (Doc. 4, ¶ 33). Slightly more specifically, Plaintiff argues that "as a private citizen", she "issued a number of statements to the press indicating her opinion that the program was crucial to the successful education of the students in the District." (*Id.* at ¶ 20).  Therefore, looking at the Amended Complaint in the light most favorable to the plaintiff, the Court must determine whether

10

Plaintiff has pleaded sufficient plausible allegations that her statements constitute protected activity, and that these statements were a substantial factor in the alleged retaliatory action.

Plaintiff alleges that she was not acting in her official capacity as Superintendent, but instead as a private citizen. (Doc. 4, ¶ 20). However, her Amended Complaint makes clear that she was speaking on a single issue, the Reading Workshop program, a program for which she was responsible by virtue of her employment. (Doc. 4, ¶¶18, 20, 26, 27). The Supreme Court recently clarified that under *Garcetti*'s "pursuant to official duties" test, the "critical question . . . is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Lane v. Franks*, 134 S.Ct. 2369, 2379, 189 L Ed.2d 312 (2014); *see also Flora v. Cnty. of Luzerne*, --- F.3d ---, 2015 WL 178640, at *5, *7 (3d Cir. 2015) (applying *Lane* by asking whether the plaintiff's speech was "part of his ordinary responsibilities," that is, "part of the work he was paid to perform on an ordinary basis"); *Dougherty v. Sch. Dist. of Philadelphia*, 772 F.3d 979, 990 (3d Cir. 2014) ("If anything, *Lane* may broaden *Garcetti*'s holding by including 'ordinary' as a modifier to the scope of an employee's job duties."). In *Lane*, the Court emphasized that "the mere fact that a citizen's speech concerns information acquired by virtue of his public employment does not transform that speech into employee—rather than citizen—speech." *Id.* Here, neither the precise contours of Plaintiff's employment responsibilities and duties, nor the precise content of Plaintiff's public speech for which she alleges Defendants retaliated against her, have been pleaded in the Amended Complaint, thereby precluding a

determination by the Court at this juncture whether Snook was speaking as a public citizen. However, Plaintiff's Amended Complaint does plead sufficient allegations to state a claim on the basis that the matter she addressed may be one of public concern wherein its "content, form, and context establish that the speech involves a matter of political, social, or other concern to the community," and that she may have been acting in the capacity of a public citizen and not in the course of her employment, and may therefore be protected under the First Amendment.

Assuming that Plaintiff did engage in protected speech when she made statements in support of the Reading Workshop program, she must also show that Defendants' actions were sufficient to deter a person of ordinary firmness from exercising her First Amendment rights and that her protected speech "was a substantial or motivating factor in the relevant decision." *Suppan v. Dadonna*, 203 F.3d 228, 235 (3d Cir. 2000).  Consequently, while the Defendants' alleged retaliatory acts must be more than trivial, an employee's First Amendment rights are adversely affected when the employer "makes decisions, which relate to promotion, transfer, recall and hiring, based on the exercise of an employee's First Amendment rights." *Brennan*, 350 F.3d at 419 (finding that "Brennan's allegation that he was taken off the payroll in December 1994 and given 2-day, 21-day and 63-day suspensions would obviously support a cause of action for illegal retaliation under § 1983").

Accepting Plaintiff's factual allegations as true, Plaintiff issued statements to the press regarding the Reading Workshop program while the program was active in the District

12

and, after issuing these statements, she was suspended without pay or any explanation of the charges against her or opportunity to respond. (Doc. 4, ¶¶ 20, 22). Plaintiff also alleges that Defendants issued public statements stating that Snook had been suspended without pay and accusing her of engaging in criminal conduct by breaching the Midd-West School District's email system and illegally monitoring emails and that Defendants contacted the Snyder County District Attorney to press charges against her. (Id. at ¶¶ 24, 25). While unnecessary at this stage in the proceedings, Defendants' brief in opposition fails to offer any explanation for Snook's suspension.

Plaintiff has therefore pleaded sufficient particularized allegations to raise the issue of whether her statements were made in the capacity of a private citizen and implicated a matter of public concern, thereby subject to the First Amendment protections, and whether this protected speech was a substantial factor in the alleged retaliatory actions.

Therefore, Plaintiff has alleged facts sufficient to state a First Amendment retaliation claim and the Court will deny Defendant's motion to dismiss this Count.

## C. Counts II and III - Procedural and Substantive Due Process

Counts II and III of Plaintiff's Amended Complaint, brought against all defendants, allege violations of Snook's Fourteenth Amendment Due Process rights. Specifically, Plaintiff claims Defendants "violated Plaintiff's procedural due process rights in failing to afford her adequate procedural protections . . . in connection with the suspension without pay" (Doc. 4, ¶ 40) and "violated Plaintiff's property interests, in her continued employment,

13

and her liberty interests, in her reputation. . . . " (*Id*. at ¶ 43). In turn, Defendants argue that Plaintiff's due process claims are premature because Plaintiff has failed to exhaust administrative remedies that are a prerequisite to filing a complaint in federal court. (Doc. 15, at 13-16).

### 1. Procedural Due Process

With respect to Plaintiff's procedural due process claim, Snook alleges that she has a protected property interest in continued public employment, as assistant superintendent and acting superintendent, under both her employment contract and Pennsylvania School Code, 24 P.S. §§1-101, *et seq*. and that, while the contract and Code mandate that any adverse employment action must comport with the dictates of the Due Process clause, to date, this has not occurred. In particular, Plaintiff contends that "to date, no written or oral statement of charges has been received by Plaintiff, no pre-suspension hearing was held, and the only explanation for the suspension constitutes statements from Defendants to the press and to law enforcement indicating a desire to charge Plaintiff criminally for accessing emails while she was acting superintendent. . . ." (Doc. 4, ¶¶ 37-39). In response to this claim, Defendants argue both that Plaintiff's due process claims are premature because she has failed to exhaust her administrative remedies and alternatively that she admittedly received a *Loudermill* hearing. Neither argument is convincing.

As a preliminary matter, at this stage in the proceedings, it is sufficient that Plaintiff alleges that she has not received an adequate hearing or an oral or written statement of the

14

charges against her. Despite Defendants' contention that a "'Loudermill Hearing' was conducted on May 5, 2014, giving the Plaintiff an opportunity to hear the nature of the case as is required under the Pennsylvania School Code, Section 1080 and the 14th Amendment" (Doc. 15, at 14-15), Plaintiff's allegations contradict this statement and the Court cannot determine the adequacy of the hearing at this time.

Plaintiff's Amended Complaint clearly alleges that she was a government employee subject to a written employment contract. "The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 576, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). "To have a property interest in a benefit, a person . . . must . . . have a legitimate claim of entitlement to it." *Id.* at 577. This entitlement is established by "the existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.* The Supreme Court has held that this principle of "entitlement" operates to create property interests in public employment, including for public school teachers and school staff members subject to written contracts. *Id.* at 576 (collecting cases).

Moreover, once these rules and understanding create a property interest in continued public employment, "the Due Process Clause provides that [that interest] cannot be deprived except pursuant to constitutionally adequate procedures." *Cleveland Bd. of*

*Educ. v. Loudermill*, 470 U.S. 532, 541, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). "While the legislature may elect not to confer a property interest in public employment, it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards." *Id.* (quoting *Arnett v. Kennedy*, 416 U.S. 134, 167, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974) (Powell, J., concurring in part)) (internal alterations omitted). Therefore, a public employee with a property interest in continued employment "is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story," before he or she may be terminated. *Id.* at 546.

Here, the record shows that Plaintiff had a written contract by which she was employed in the capacity of an Assistant Superintendent "for a term of four (4) years, effective August 8, 2010, and ending June 30, 2014." (Employment Contract, § 3.00). Based on this language, which Snook includes in her Amended Complaint, Plaintiff has alleged adequate facts that the School District has created a legitimate claim of entitlement to continued employment during the specified term, and therefore vested Snook with a property interest in her employment until June 30, 2014. As such, she would have been entitled to a hearing prior to her removal from employment. While Plaintiff's Amended Complaint does state that she "met with Defendants at a conference that Defendants labeled a 'Loudermill hearing' for a vote on her termination", she also alleges that, at this meeting, "Defendants did not hold any votes but instead informed Plaintiff that they intended

to vote approximately two weeks later to determine whether to hire a 'special prosecutor.'" (Doc. 4, ¶ 28). Plaintiff's Amended Complaint does not specifically state whether or not she received any notice or opportunity to be heard during this conference, which would be required under both the terms of her contract and *Loudermill*, but Plaintiff later states that she "has not received any hearing or written statement of the charges against her." (*Id*. at ¶ 30). These factual statements, taken as true as the Court must at this stage of the case, sufficiently state a claim for relief.

Furthermore, Defendants impermissibly shift the burden on the Plaintiff to request a hearing. Plaintiff's contract specifically states that she is subject to termination for valid cause for reasons specified under Section 1080 of the Public School Code and that "[b]efore her dismissal, the School District will provide the Assistant Superintendent for Curriculum, Instruction and Technology with written charges, adequate notice of a hearing and - a fair and impartial hearing before the Board of School Directors" (Employment Contract, § 7.00(a)). Section 1080 of the Public School Code, entitled "Removal", provides that:

> District superintendents and assistant district superintendents may be removed from office and have their contracts terminated, after hearing . . . of which hearing notice of at least one week has been sent by mail to the accused, as well as to each member of the board of school directors.

24 Pa. C. S. § 10-1080(a). Both the statutory and contractual language grant Plaintiff the right to a hearing but they do not require Plaintiff to request it. Rather, the language can reasonably be read to place the burden on the School Board to provide the hearing, and the

17

School District Defendants do not contend otherwise.  Here, the School Board has allegedly

not offered, scheduled, or attempted to provide in any way, Plaintiff with a hearing sufficient

to meet the statutory or contractual requirements.

Defendants' argument that Plaintiff's due process claims are premature and that

Plaintiff had not yet been terminated, and therefore was not entitled to the constitutional,

statutory, or contractual right to a hearing, are attempts to circumvent the established

procedures and process that Plaintiff is owed.  "A public employee has a property interest

in not being suspended without pay with intent to dismiss." *Coover v. Saucon Valley Sch.*

*Dist.*, 955 F.Supp. 392, 404 (E.D. Pa. 1997) (citing *Gniotek v. City of Philadelphia,* 808 F.2d

241 (3d Cir.1986)).[3]  Therefore, while the Court recognizes that both Plaintiff's contract and

---

[3] Despite Defendants' arguments, the Supreme Court has found that an individual is entitled to
notice and opportunity to be heard even when they are merely suspended, and not terminated.
Nonetheless, in holding that a public employee is not categorically entitled to a pre-suspension hearing,

> [The Supreme] Court has recognized, on many occasions, that where a State must act
> quickly, or where it would be impractical to provide predeprivation process, postdeprivation
> process satisfies the requirements of the Due Process Clause. Indeed, . . . we have
> rejected the proposition that due process *always* requires the State to provide a hearing
> prior to the initial deprivation of property.  And in *FDIC v. Mallen,* 486 U.S. 230, 108 S.Ct.
> 1780, 100 L.Ed.2d 265 (1988), where we unanimously approved the Federal Deposit
> Insurance Corporation's (FDIC's) suspension, without prior hearing, of an indicted private
> bank employee, we said: "An important government interest, accompanied by a substantial
> assurance that the deprivation is not baseless or unwarranted, may in limited cases
> demanding prompt action justify postponing the opportunity to be heard until after the initial
> deprivation."

*Gilbert v. Homar,* 520 U.S. 924, 930-930, 117 S.Ct. 1807, 138 L.Ed.2d 120 (1997).  While the Supreme
Court declined to address whether the employee at issue was provided an adequately prompt post-
suspension hearing, the Court makes clear that the basic due process requirements are still necessary.

24 P.S. § 10-1080 provide for a hearing prior to Snook's *termination* from employment, Defendants' actions in suspending Plaintiff on April 10, 2014, and allowing her contract to end on June 30, 2014, allegedly without affording her notice and an opportunity to be heard, effectively alleges a termination. Simply because Defendants were able to run-out the clock on Plaintiff's contract does not allow them to escape responsibility for allegedly depriving Snook of her procedural rights.

As a result of each of the aforementioned reasons, Defendants' motion to dismiss Plaintiff's procedural due process claim is denied.

<u>2. Substantive Due Process</u>

With respect to the substantive due process claim, Plaintiff alleges violations of her liberty and property interests in that she was "illegally" suspended and Defendants "publicly disseminated false and defamatory statements about Plaintiff, her honesty and her reputation . . . harming Plaintiff, both professionally and personally within the community." (Doc. 4, ¶ 42).

> To establish a substantive due process claim, a plaintiff must prove the particular interest at issue is protected by the substantive due process clause and the government's deprivation of that protected interest shocks the conscience. . . . Deprivation violates due process only when it shocks the conscience, which encompasses only the most egregious official conduct. . . . While the meaning of the [shocks the conscience] standard varies depending upon factual context, merely alleging an improper motive is insufficient, even where the motive is unrelated to the merits of the underlying decision.

---

Here, it would be premature for us to determine whether it would have been impractical for the state to provide a pre-deprivation hearing, and Plaintiff's factual allegations sufficiently allege that any post-suspension hearing she may have received failed to meet the requisite due process standards.

Case 4:14-cv-00948-RDM Document 26 Filed 03/16/15 Page 20 of 31

*Chainey v. Street*, 523 F.3d 200, 219-220 (3d. Cir. 2008) (internal citations and quotations

omitted).

> Because the Due Process Clause does not purport to supplant traditional tort
> law in laying down rules of conduct to regulate liability for injuries that attend
> living together in society, we have previously rejected claims that the Due
> Process Clause should be interpreted to impose federal duties that are
> analogous to those traditionally imposed by state tort law. The reasoning in
> those cases applies with special force to claims asserted against public
> employers because state law, rather than the Federal Constitution, generally
> governs the substance of the employment relationship.

*Collins v. City of Harker Heights*, 503 U.S. 115, 128, 112 S. Ct. 1061, 117 L. Ed. 2d 261

(1992) (internal citations and quotation marks omitted). As such, "[a] bad-faith violation of

state law remains only a violation of state law." *United Artists Theater Circuit, Inc. v. Twp. of*

*Warrington,* 316 F.3d 392, 402 (3d Cir. 2003). As the Third Circuit clarified,

> an underlying constitutional violation is not required to state a substantive due
> process claim, and some violations of state law may "shock the conscience."
> This, however, does not mean that every violation of state law is
> "constitutionalized" through the application of the substantive due process
> clause, and the District Court was properly concerned with preventing this
> provision from turning into a broad authorization to review state actors'
> compliance with state law. On several occasions, this Court has implied that
> a violation of state law will constitute conscience shocking behavior when it
> contains "allegations of corruption, self-dealing, bias against an ethnic group,
> or additional facts that suggest[ ] conscience-shocking behavior." *Chainey v.*
> *Street*, 523 F.3d 200, 220 (3d Cir. 2008); *see also Eichenlaub v. Township of*
> *Indiana*, 385 F.3d 274, 286 (3d Cir. 2004). In other words, a state official's
> failure to follow state law does not, by itself, shock the conscience in the
> absence of additional facts.

*Whittaker v. Cnty. of Lawrence*, 437 F. App'x 105, 108-09 (3d Cir. 2011).

Furthermore, "as a general matter, the [Supreme] Court has always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Collins*, 503 U.S. at 125. Consequently, courts must be careful to observe "the Supreme Court's repeated warnings against an overly generous interpretation of the substantive component of the Due Process Clause." *Fagan v. City of Vineland*, 22 F.3d 1296, 1306 n.6 (3d Cir. 1994).

The Court has already found that Plaintiff has an established property interest in her employment. However, "not all property interests worthy of procedural due process protection are protected by the concept of substantive due process." *Reich v. Beharry,* 883 F.2d 239, 243 (3d Cir.1989). Instead, to state a substantive due process claim, "a plaintiff must have been deprived of a particular quality of property interest." *DeBlasio v. Zoning Bd. of Adjustment,* 53 F.3d 592, 598 (3d Cir.1995), *overruled on other grounds* by *United Artists Theatre Circuit, Inc. v. Twp. of Warrington, PA.*, 316 F.3d 392 (3d Cir. 2003). "[W]hether a certain property interest embodies this 'particular quality' is not determined by reference to state law, but rather depends on whether that interest is 'fundamental' under the United States Constitution." *Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 140 (3d Cir. 2000). "If the interest is not 'fundamental,' however, the governmental action is entirely outside the ambit of substantive process and will be upheld so long as the state satisfies the requirements of procedural due process." *Id.* at 142.

In *Nicholas*, the Court held that a professor's tenured public employment was not a

fundamental property interest entitled to substantive due process protection.[4]  The Third

Circuit reasoned as follows:

> Nicholas's tenured public employment is a wholly state-created contract right;
> it bears little resemblance to other rights and property interests that have
> been deemed fundamental under the Constitution. We agree . . . that "it
> cannot be reasonably maintained that public employment is a property
> interest that is deeply rooted in the Nation's history and traditions." Nor does
> public employment approach the interests "'implicit in the concept of ordered
> liberty like personal choice in matters of marriage and family.'" [*Homar v.
> Gilbert*, 63 F.Supp.2d 559, 576 (M.D. Pa. 1999)] (citation omitted); *see
> also Collins*, 503 U.S. at 128, 112 S.Ct. 1061 ("state law, rather than the
> Federal Constitution, governs the substance of the employment relationship").
> Accordingly, we view public employment as more closely analogous to those

---

[4] In so holding, the Third Circuit adopted an approach undertaken by a majority of the Circuits, and
cited the following cases:

*See Singleton v. Cecil*, 176 F.3d 419, 425–26 (8th Cir.1999) (en banc) ("a public
employee's interest in continued employment with a governmental employer is not so
'fundamental' as to be protected by substantive due process"); *McKinney v. Pate*, 20 F.3d
1550, 1560 (11th Cir.1994) (en banc) ("employment rights are not 'fundamental' rights
created by the Constitution"); *Sutton v. Cleveland Bd. of Educ.*, 958 F.2d 1339, 1350 (6th
Cir.1992) ("plaintiffs' state-created right to tenured employment lacks substantive due
process protection"); *Huang v. Board of Governors of Univ. of North Carolina*, 902 F.2d
1134, 1142 n. 10 (4th Cir.1990) (professor's interest in position in university department "is
essentially a state law contract right, not a fundamental interest embodied in the
Constitution"); *see also Local 342, Long Island Public Serv. Employees v. Town Bd. of
Huntington*, 31 F.3d 1191, 1196 (2d Cir.1994) ("We do not think, however, that simple,
state-law contractual rights, without more, are worthy of substantive due process
protection."); *Kauth v. Hartford Ins. Co. of Illinois*, 852 F.2d 951, 958 (7th Cir.1988) ("In
cases where the plaintiff complains that he has been unreasonably deprived of a state-
created property interest ... the plaintiff has not stated a substantive due process
claim."); *Lum v. Jensen*, 876 F.2d 1385, 1389 (9th Cir.1989) (finding "no clearly
established constitutional right to substantive due process protection of continued public
employment" in Ninth Circuit as of 1984); *but see Newman v. Massachusetts*, 884 F.2d 19,
25 (1st Cir.1989) ("school authorities who make an arbitrary and capricious decision
significantly affecting a tenured teacher's employment status are liable for a substantive
due process violation").

*Nicholas*, 227 F.3d at 142-143.

state-created property interests that this Court has previous deemed unworthy of substantive due process.

*Nicholas,* 227 F.3d at 143.

In accord with the Third Circuit's analysis, Plaintiff has failed to establish the

fundamental constitutional interest necessary to sustain a substantive due process claim

based on a violation of her property interest.

Plaintiff's claim that Defendants violated her liberty interest in her reputation due to

Defendants public dissemination of "false and defamatory statements" also fails for reasons

similar to why she lacks a substantive due process claim for violations to her property

interest.

An interest in reputation alone is not protected by the Due Process Clause. *Versarge*

*v. Twp. of Clinton, New Jersey,* 984 F.2d 1359, 1371 (3d Cir.1993) (citing *Paul v. Davis,* 424

U.S. 693, 701-712, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976)).

> Rather, to make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation *plus* deprivation of some additional right or interest. . . . In the public employment context, the "stigma-plus" test has been applied to mean that when an employer creates and disseminates a false and defamatory impression about the employee in connection with his termination, it deprives the employee of a protected liberty interest. The creation and dissemination of a false and defamatory impression is the "stigma," and the termination is the "plus." When such a deprivation occurs, the employee is entitled to a name-clearing hearing.

*Hill,* 455 F.3d at 236.

This entitlement to a name-clearing hearing clearly implicates a procedural due

process right, but Plaintiff does not bring a claim of a procedural due process violation of her

liberty interest, only a substantive due process violation. In light of the fact that an

individual's fundamental rights have generally been limited to "matters relating to marriage,

family, procreation, and the right to bodily integrity", *Albright v. Oliver*, 510 U.S. 266, 272,

114 S.Ct. 807, 127 L.Ed.2d 114 (1994), and the Supreme Court's stated-reluctance to

expand the concept of substantive due process, even assuming that Snook alleged

sufficient facts to meet the stigma-plus test,[5] she cannot demonstrate that this deprivation

was so "fundamental" as to implicate a substantive due process claim.[6]

### 3. Conclusion

For the aforementioned reasons, Defendants' motion to dismiss Plaintiff's Fourteenth

Amendment procedural due process claim will be denied. Plaintiff's Fourteenth Amendment

substantive due process claim will be dismissed with prejudice.

## D. Counts IV and V - Pennsylvania School Code and Breach of Contract

Counts IV and V of Plaintiff's Amended Complaint, brought only against the Midd-

West School District, allege that Snook has been suspended without pay or due process, in

violation of the Pennsylvania School Code (Doc. 4, Count IV, ¶¶ 44-47) and that the School

---

[5] Because Plaintiff has not brought a procedural due process claim with respect to her liberty interests, we decline to engage in an analysis of whether Snook has met the requirements of the stigma-plus test.

[6] Plaintiff's brief in opposition to Defendants' motion fails to address the "shocks-the-conscience" standard, thereby leaving the Court to assume that the Defendants' actions which Snook believes encompass "the most egregious official conduct" consist of "illegally" suspending her and publicly disseminating false and defamatory statements about her. However, because we have found that Plaintiff's property or liberty interests do not create a substantive due process claim, we need not determine whether Snook has provided sufficient plausible allegations that the School District Defendants' actions rise to the level of conscience-shocking.

District's suspension of Plaintiff, "without pay, cause, or a hearing" violated her employment agreement and caused her harm "in the form of lost wages and benefits that were due to her under the agreement in accord with Pennsylvania law" (Doc. 4, Count V, ¶¶ 48-50).

School District Defendants move to dismiss these two counts for largely the same reasons as they set forth in support of their motion to dismiss Plaintiff's Fourteenth Amendment claims: namely, that "the process is still ongoing and therefore no violation or breach of contract claim is ripe for litigation" as Plaintiff has allegedly failed to exhaust all administrative remedies. (Doc. 15, at 16). While we need not reiterate our analysis of Plaintiff's procedural due process claim, we reject Defendants' arguments for the same reasons. Defendants' argument that Plaintiff must have exhausted her administrative remedies, when Defendants allegedly failed to even begin the administrative process by providing her with an adequate hearing, impermissibly places a burden on Plaintiff to request a hearing as opposed to one being provided to her. Furthermore, Defendants' ability to suspend Plaintiff and allow her contract to end, thereby bypassing the statutory and contractual requirements of affording her the requisite due process, render Plaintiff's claims of violations of the School Code and her contract ripe for litigation in this Court.

Consequently, Defendants' motion to dismiss Counts IV and V is denied.

## E. Count VI - Defamation

Count VI of Plaintiff's Amended Complaint alleges that "the individual defendants defamed Plaintiff by publishing false statements about her or by directing that false

25

statements be published about her in that Defendants indicated publicly that Plaintiff had engaged in criminal activity for which she was being suspended . . . ." (Doc. 4, ¶ 52).

To establish a claim of defamation, a plaintiff must show: "(1) The defamatory character of the communication [;] (2) Its publication by the defendant [;] (3) Its application to the plaintiff [;] (4) The understanding by the recipient of its defamatory meaning [; and] (5) The understanding by the recipient of it as intended to be applied to the plaintiff." *Graboff v. Colleran Firm*, 744 F.3d 128, 135 (3d Cir. 2014) (citing *Tucker v. Fischbein*, 237 F.3d 275, 281 (3d Cir. 2001)). Furthermore, "when a public official or public figure sues for defamation, the First Amendment demands that the plaintiff prove both that the statement was false and that it was made with 'actual malice.'" *Tucker*, 237 F.3d at 283 (collecting cases).

Plaintiff's claim for defamation fails in several respects. While Snook alleges the publication of false statements, she does not provide any indication as to who made the statements, where these statements were allegedly published, in what way they were published, when they published, or to whom they were published. Plaintiff's mere assertions, without any factual allegations in support, do not raise a right to relief above the speculative level. Additionally, Plaintiff had pleaded no facts that could lead to a reasonable inference of malice.

As a result of Plaintiff's failure to adequately set forth facts necessary to plead a cause of action for defamation, the Court will dismiss Plaintiff's claim for defamation, but with leave to amend.

### F. Count VII - Abuse of Process

The final Count in Plaintiff's Amended Complaint alleges that the individual defendants "abused legal process against [her] by referring her to the criminal justice authorities for the institution of criminal charges against her" for the purpose of discrediting Plaintiff and her policies and programs and/or to force Plaintiff to resign her position. (Doc. 4, ¶¶ 56, 57).

"The tort of 'abuse of process' is defined as the use of legal process against another 'primarily to accomplish a purpose for which it is not designed.'" *Rosen v. Am. Bank of Rolla*, 627 A.2d 190, 192 (Pa. Super. Ct. 1993) (quoting Restatement (Second) of Torts, § 682). To succeed on an abuse of process claim,

> the plaintiff must show some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process . . . ; and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions.

*Lerner v. Lerner*, 954 A.2d 1229, 1238 (Pa. Super. Ct. 2008) (quoting *Shiner v. Moriarty*, 706 A.2d 1228, 1236 (Pa. Super. Ct. 1998)) (internal alterations omitted). Additionally, a plaintiff must show that he or she suffered harm as a result of the abuse of process. *Rosen*, 627 A.2d at 192.

Plaintiff appears to confuse two separate and distinct actions: abuse of process and

malicious use of process.

> The crux of an abuse of process claim is the "improper use of process after it
> has been issued, that is, a perversion of it." *McGee v. Feege,* 517 Pa. 247,
> 535 A.2d 1020, 1023 (Pa.1987) (citations omitted).  Under Pennsylvania law,
> "abuse of process" and "malicious use of process" are similar to, but
> ultimately distinct from one another. *See, e.g., id.* The critical difference
> between the two claims is that "[m]alicious use of civil process has to do with
> the wrongful initiation of such process, while abuse of civil process is
> concerned with a perversion of a process after it is issued." *Id.* (citations
> omitted).

*Kauffman v. Barbagello*, 2013 WL 6388487, \*14 (M.D. Pa. 2013).  As such, while the term

"process", when used in the tort of abuse of process "'has been interpreted broadly, and

encompasses the entire range of procedures incident to the litigation process," including

discovery proceedings, the noticing of depositions and the issuing of subpoenas, *Rosen,*

627 A.2d at 192 (quoting *Nienstedt v. Wetzel,* 133 Ariz. 348, 352, 651 P.2d 876, 880, 33

A.L.R.4th 635, 641 (1982)), it cannot be extended to include actions by Defendants in

merely referring a matter to a district attorney.  Plaintiff's claim is based on the alleged

wrongful atternpted initiation of an action against her, not on the perversion of a legal

process already underway.  As such, Snook cannot sustain a claim for abuse of process

and the Court will dismiss this Count with prejudice.

## G. High Public Official Immunity

The individual defendants also claim that they are entitled to "high public official

immunity" under Pennsylvania law for all claims against them. (Doc. 15, at 8-9).

See *Lindner v. Mollan,* 677 A.2d 1194 (Pa. 1996). Pennsylvania courts have recognized

that school board directors qualify as high public officials for purposes of this common law

doctrine. *See, e.g., Matta v. Burton,* 721 A.2d 1164, 1166 (Pa.Cmwlth.1998).

### 1. Constitutional Claims

"[T]he doctrine of high official immunity under Pennsylvania law does not shield [a

defendant] from suit under § 1983. That doctrine shields high officials from state law claims,

not constitutional claims." *Hill,* 455 F.3d at 243-44. Therefore, Defendants' argument

necessarily fails with respect to Counts I, II, III, all federal civil-rights claims brought

under 42 U.S.C. § 1983.

### 2. Defamation

Pennsylvania's doctrine of absolute privilege for high public officials,

> is unlimited and exempts a high public official from all civil suits for damages
> arising out of false defamatory statements and even from statements or
> actions motivated by malice, provided the statements are made or the actions
> are taken in the course of the official's duties or powers and within the scope
> of his authority, or as it is sometimes expressed, within his jurisdiction.

*Lindner,* 677 A.2d at 1195 (quoting *Matson v. Margiotti,* 88 A.2d 892, 895 (Pa. 1952)).

In determining whether a high public official acted within the scope of his or her duties at the

time of the allegedly defamatory statements, the Pennsylvania Commonwealth Court has

considered two relevant factors: (1) the formality of the forum in which the alleged

defamation occurred; and (2) the relationship of the legitimate subject of governmental

29

concern to the person seeking damages. *Hall v. Kiger*, 795 A.2d 497, 501 (Pa. Commw. Ct. 2002). *See also*, *Heller v. Fulare*, 454 F.3d 174 (3d Cir. 2006).

The Superior Court of Pennsylvania's decision in *McKibben v. Schmotzer* is instructive in this case. There, the Court found that a Mayor "was engaged in the course of her duties and within the scope of her authority when she suspended Chief McKibben and issued a 'News Release' regarding his suspension. She was empowered to suspend Chief McKibben, and her comments in the 'News Release', although harsh and, as the jury found, untrue, were 'closely related' to her duties of supervising the borough police force." *McKibben v. Schmotzer*, 700 A.2d 484, 491 (Pa. Super. Ct. 1997). However, the Court reached the opposite conclusion with respect to the plaintiff's claims of slander which arose from the Mayor's subsequent statement to the press following a hearing on the criminal complaint she had brought against the police chief. *Id*. at 492. "Just as it was clear that Mayor Schmotzer was acting within the scope of her authority when she issued the 'News Release' regarding the chief's suspension, we find it is equally clear that Mayor Schmotzer was acting well outside the course of her duties and scope of her authority when she slandered Chief McKibben outside the courtroom." *Id*.

While Defendants claim that Plaintiff's complaint states that they were at all times only acting in their official capacities, and they are therefore immunized from suit (Doc. 15, at 9-10), this is not necessarily the case. Plaintiff's Amended Complaint alleges that Defendants' published, or directed to be published, public statements indicating that she

engaged in criminal activity for which she was being suspended.  (Doc. 4, ¶ 52).  As previously stated, Snook does not provide any indication as to who made these statements, where these statements were allegedly published, in what way they were published, when they published, or to whom they were published.  Nor is there information before this Court as to the scope of the School Board Officials' duties.  Therefore, the Court does not have sufficient information to determine whether the individual defendants are entitled to high public official immunity.        Because the Court has granted the plaintiff leave to amend her claim for defamation for reasons that relate to the lack of specificity as to the elements of the cause of action, the Court will deny Defendants' request for high public official immunity without prejudice.

## V. CONCLUSION

For the foregoing reasons, the court will grant in part and deny in part Defendants' Motion to Dismiss Plaintiff's Amended Complaint (Doc. 13).  A separate Order follows.

Robert D. Mariani
United States District Judge

31