## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DAPHNE SNOOK** | : |
| | : |
| **Plaintiff,** | : |
| **v.** | : **4:14-CV-948** |
| | : **(JUDGE MARIANI)** |
| **MIDD-WEST SCHOOL DISTRICT, et al.** | : |
| | : |
| **Defendants.** | : |

### MEMORANDUM OPINION

#### I.   INTRODUCTION AND PROCEDURAL HISTORY

Presently before the Court is Defendant Orris Knepp, III's Motion to Dismiss

Plaintiff's Amended Complaint.  (Doc. 11).

On May 16, 2014, Plaintiff, Daphne Snook, filed a Complaint in the above-captioned

matter (Doc. 1), and subsequently filed an Amended Complaint on May 22, 2014 (Doc. 4),

naming as defendants the Midd-West School District, Victor Abate, Ronald Wilson, Ronald

Hoffman, Shawn Sassaman, Corey Smith, Jeremy Tittle, Sherryl Wagner, Nancy Kroh, and

Orris Knepp, III.  Plaintiff's Amended Complaint sets forth seven counts: Count I, against all

Defendants, for First Amendment Retaliation; Counts II and III, against all Defendants, for

violations of her Procedural Due Process and Substantive Due Process rights under the

Fourteenth Amendment; Count IV, against the Midd-West School District, for a violation of

the Pennsylvania School Code, 24 P.S. §§ 1-101, *et seq.*; Count V, against the Midd-West

School District, for breach of contract; Count VI, against all the individual defendants, for

defamation; and Count VII, against all the individual defendants, for abuse of process.

(Doc. 4).

Defendant Orris Knepp, III, moved to dismiss the Amended Complaint (Doc. 11) as

did the School District Defendants[1] (Doc. 13) which the Court will address in a separate

opinion. The parties have fully briefed the motion, and it is now ripe for decision. For the

reasons set forth below, the Court will grant Defendant Knepp's motion.

## II. FACTUAL ALLEGATIONS

Plaintiff's Amended Complaint alleges the following facts:

On August 8, 2011, Snook entered into a written agreement for employment as the

Assistant Superintendent for Curriculum, Instruction, and Technology for the Midd-West

School District. (Am. Compl., Doc. 4, ¶ 14; see also Employment Contract, Doc. 4, Ex. 1).

The contract employed Snook in this capacity for a term of four years, effective August 8,

2010, and ending June 30, 2014. (Doc. 4, ¶ 15; Employment Contract, § 3.00). Pursuant to

the terms of the agreement:

> The Assistant Superintendent for Curriculum, - Instruction and Technology
> shall, throughout the term of this Agreement, [is] subject to termination of
> contract for valid cause for reasons specified under Section 1080 of the
> Public School Code, including willful violation of any policies of the School
> District or any provision of this Agreement. Before her dismissal, the School
> District will provide the Assistant Superintendent for Curriculum, Instruction
> and Technology with written charges, adequate notice of a hearing and a fair
> and impartial hearing before the Board of School Directors. If the Assistant
> Superintendent for Curriculum, Instruction and Technology is found innocent

---

[1] The School District Defendants consist of: the Midd-West School District, Victor Abate, Ronald
Wilson, Ronald Hoffman, Shawn Sassaman, Corey Smith, Jeremy Tittle, Sherryl Wagner, and Nancy Kroh.

of charges made, the Board of School Directors shall assume responsibility
for payment of costs incurred by her in her defense.

(Employment Contract, § 7.00(a)).

In December 2013, Plaintiff became the temporary acting Superintendent after the
prior Superintendent of Schools resigned supposedly because Defendants levied charges
against him. (Doc. 4, ¶ 17).

Throughout Snook's tenure with the School District, she developed and implemented
within the District a nationwide program for individualized reading education entitled
"Readers Workshop." (*Id.* at ¶ 18). Plaintiff asserts that this program was "widely
successful" in the District but that various factions within the School Board disliked it and
worked to have it canceled, "despite the effectiveness of the program and the interest of the
general public." (*Id.* at ¶ 19). While the program was active in the District and being
debated, Snook issued statements to the press representing that the program was crucial to
the successful education of the students in the District. (Doc. 4, ¶ 20). Snook contends
these statements were made in her capacity as a private citizen and that certain
Defendants[2] became openly antagonistic toward her as a result of her comments. (*Id.*).

On April 1, 2014, Defendants issued an email to all staff members of the District,
including Snook, purportedly threatening to terminate anyone who continued to publicly
speak in support of the Reading Workshop program. (*Id.* at ¶ 21). Several days later, on
April 10, 2014, Defendants suspended Plaintiff without pay. Snook alleges Defendants

---

[2] Snook does not identify which Defendants allegedly became antagonistic.

failed to provide any explanation of the charges against her or an opportunity to respond. (*Id.* at ¶ 22). The following day, Defendants canceled a scheduled teachers planning course for the Reading Workshop program. (*Id.* at ¶ 23). Defendants also issued public statements stating that Plaintiff had been suspended without pay and accusing her of engaging in criminal conduct by breaching the Midd-West School District's email system and illegally monitoring emails. (*Id.* at ¶ 24).

In addition, Defendants contacted the Snyder County District Attorney to press charges against Snook. (Doc. 4, ¶ 25). On May 9, 2014, after conducting an investigation, the District Attorney issued a press release stating that no criminal charges would be filed against Plaintiff due to insufficient evidence that she had engaged in criminal conduct. (*Id.*).

Following her suspension, Plaintiff made statements to the press regarding her continued support of the Reading Workshop program, asserting her innocence with respect to allegations of criminal wrongdoing, and stating that she believed Defendants were retaliating against her for publicly advocating in favor of the Reading Workshop program. (*Id.* at ¶¶ 26, 27).

On May 5, 2014, Snook met with Defendants for a hearing which Plaintiff contends was erroneously labeled as a "Loudermill hearing" for a vote regarding her termination. (*Id.* at ¶ 28). At this meeting, Defendants allegedly did not hold a vote and simply informed Plaintiff that they intended to vote in approximately two weeks as to whether they would hire a special prosecutor. (*Id.*). Subsequently, on May 19, 2014, Defendants did meet and

4

voted to hire Mark Remy as "special counsel" to handle "an unspecified personnel issue." (*Id.* at ¶ 29).

Snook continues to remain suspended without pay and alleges that she has not received any hearing or written statement of the charges against her. (*Id.* at ¶ 30).

## III. STANDARD OF REVIEW

A complaint must be dismissed under FED. R. CIV. P. 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v.*

*Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation

marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to
> determine the sufficiency of a complaint: First, the court must take note of the
> elements a plaintiff must plead to state a claim. Second, the court should
> identify allegations that, because they are no more than conclusions, are not
> entitled to the assumption of truth. Finally, where there are well-pleaded
> factual allegations, a court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct, the complaint has alleged - but it has not show[n] - that the

pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks

omitted). This "plausibility" determination will be a "context-specific task that requires the

reviewing court to draw on its judicial experience and common sense." *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court

must permit a curative amendment unless such an amendment would be inequitable or

futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a defendant
> moves to dismiss it, unless the district court finds that amendment would be
> inequitable or futile, the court must inform the plaintiff that he or she has leave to
> amend the complaint within a set period of time.

*Id.*

6

## IV. ANALYSIS

### A. Counts I, II, III - Plaintiff's Constitutional Claims

Plaintiff brings three constitutional claims against all Defendants, including Knepp: First Amendment Retaliation (Count I), Procedural Due Process violations (Count II) and Substantive Due Process violations (Count III).

To succeed on a claim under 42 U.S.C. § 1983, the plaintiff must demonstrate the violation of a right protected by the Constitution or laws of the United States, committed by a person acting under color of state law. *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (en banc). Section 1983 is not in itself a source of substantive rights, instead providing a remedy for violations of rights protected by other federal statutes or by the U.S. Constitution. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816, 105 S.Ct. 2427, 85 L. Ed.2d 791 (1985). Therefore, in evaluating a § 1983 claim, a Court must first "identify the exact contours of the underlying right said to have been violated" and determine "whether the plaintiff has alleged a deprivation of a constitutional right at all." *Nicini*, 212 F.3d at 806 (citing *Cnty of Sacramento v. Lewis*, 523 U.S. 833, 841 n. 5, 118 S.Ct. 1708, 140 L. Ed. 1043 (1998)).

"The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49, 108 S.Ct. 2250, 101 L. Ed.2d 40 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326, 61 S.Ct. 1031, 85 L. Ed. 1368 (1941)). A "defendant acts under

color of state law when he abuses the position given to him by the state." *Id.* at 49-50.

While Courts have repeatedly held that an attorney does not act under color of state law

simply by virtue of acting as an attorney or solicitor on behalf of a municipality or public

school board,[3] "there are three exceptional circumstances in which an attorney may become

a state actor: (1) by acting as a state official, (2) by conspiring with a state official to deprive

a person of his or her constitutional rights, or (3) by engaging in some action that is by its

nature, chargeable to the state", *Willis v. Carroll Tp.*, 2008 WL 644762, *5 (M.D. Pa. 2008)

(internal citations and quotation marks omitted).

Plaintiff contends that the second and third exceptions apply to Knepp. (Doc. 16, at

5). Specifically, Plaintiff argues that "Knepp constituted an active agent throughout,

recommending charges against Plaintiff, denying her a pre-deprivation hearing, overseeing

her suspension without pay, and defaming her good name." (*Id.*). None of these

contentions are adequately set forth in Plaintiff's Amended Complaint. At best, Snook's

Amended Complaint broadly alleges that "Defendants" contacted the District Attorney of

Snyder County in order to press charges against Plaintiff, that she "remains suspended

without pay and has not received any hearing or written statement of the charges against

her", and that "Defendants [] issued public statements indicating that Plaintiff had been

suspended without pay" and accusing her of engaging in criminal conduct (Doc. 4, ¶ 24, 25,

30). These factual assertions fail to demonstrate, above the speculative level, that Knepp

---

[3] *See, e.g., Angelico v. Lehigh Valley Hosp.*, 184 F.3d 268, 277 (3d Cir. 1999); *Anderson v. Perhacs*, 2013 WL 1336124, *4 (W.D. Pa. 2013); *Spradlin v. Borough of Danville, 2005 WL 3320788,* *3 (M.D. Pa.2005).

8

conspired with one or more of the School District Defendants to deprive Snook of her constitutional rights or even what actions Knepp may have taken that, by their very nature, would be chargeable to the state. Additionally, Plaintiff's Amended Complaint does not set forth any facts which could reasonably be read as stating that Knepp possessed the authority to make the employment decisions that relate to, or allegedly violate, Snook's protected rights under § 1983.

Furthermore, with respect to Plaintiff's contention that Knepp conspired with the other defendants to violate Plaintiff's rights, Plaintiff's Amended Complaint does not include any claim of conspiracy, or claim which could be reasonably read to imply an allegation of conspiracy, and is devoid of any factual allegations to support even an inference that there was an agreement or understanding between Knepp and one or more individuals to commit any of alleged unlawful acts set forth in the Amended Complaint. *See Pellegrino Food Products Co., Inc. v. City of Warren*, 136 F.Supp.2d 391, 409-410 (W.D. Pa. 2000) ("To state a section 1983 conspiracy claim, a plaintiff must set forth factual allegations of combination, agreement, or understanding among all or between any of the defendants or coconspirators to plot, plan, or conspire to carry out the alleged chain of events. There must be an agreement of two or more persons to do a criminal act, or to do an unlawful act by unlawful means or for an unlawful purpose. The Third Circuit has also acknowledged that conclusory allegations of concerted action without facts actually reflecting such action

9

may be insufficient to state a conspiracy claim.") (Internal quotation marks and citations omitted).

For the aforementioned reasons, Counts I, II, and III will be dismissed against Defendant Knepp.

### B. Count VI – Defamation

Count VI of Plaintiff's Amended Complaint alleges that "the individual defendants defamed Plaintiff by publishing false statements about her or by directing that false statements be published about her in that Defendants indicated publicly that Plaintiff had engaged in criminal activity for which she was being suspended . . . ." (Doc. 4, ¶ 52).

To establish a claim of defamation, a plaintiff must show: "(1) The defamatory character of the communication [;] (2) Its publication by the defendant [;] (3) Its application to the plaintiff [;] (4) The understanding by the recipient of its defamatory meaning [; and] (5) The understanding by the recipient of it as intended to be applied to the plaintiff." *Graboff v. Colleran Firm*, 744 F.3d 128, 135 (3d Cir. 2014) (citing *Tucker v. Fischbein*, 237 F.3d 275, 281 (3d Cir. 2001)).  Furthermore, "when a public official or public figure sues for defamation, the First Amendment demands that the plaintiff prove both that the statement was false and that it was made with 'actual malice.'" *Tucker*, 237 F.3d at 283 (collecting cases).

As explained in this Court's memorandum opinion granting the School District Defendants' motion to dismiss Count VI, Plaintiff's claim for defamation fails for several

reasons. While Snook alleges the publication of false statements, she does not say who made the statements, when they were made, to whom they were made, or where these statements were allegedly published and in what way they were published. Plaintiff's mere assertions, without any supporting factual allegations, do not raise a right to relief above the speculative level. Additionally, Plaintiff had pleaded no facts that could lead to a reasonable inference of malice.

As a result of Plaintiff's failure to adequately set forth facts necessary to plead a cause of action for defamation, the Court will dismiss Plaintiff's claim for defamation with leave to amend.

## C. Count VII – Abuse of Process

The final Count in Plaintiff's Amended Complaint alleges that the individual defendants, including Knepp, "abused legal process against [Snook] by referring her to the criminal justice authorities for the institution of criminal charges against her" for the purpose of discrediting Plaintiff and her policies and programs and/or to force Plaintiff to resign her position. (Doc. 4, ¶¶ 56, 57).

"The tort of 'abuse of process' is defined as the use of legal process against another 'primarily to accomplish a purpose for which it is not designed.'" *Rosen v. Am. Bank of Rolla*, 627 A.2d 190, 192 (Pa. Super. Ct. 1993) (quoting Restatement (Second) of Torts, § 682). To succeed on an abuse of process claim,

> the plaintiff must show some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process . . . ;

11

and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions.

*Lerner v. Lerner*, 954 A.2d 1229, 1238 (Pa. Super. Ct. 2008) (quoting *Shiner v. Moriarty*,

706 A.2d 1228, 1236 (Pa. Super. Ct. 1998)) (internal alterations omitted).  Additionally, a

plaintiff must show that he or she suffered harm as a result of the abuse of process.  *Rosen,*

627 A.2d at 192.

Plaintiff appears to confuse two separate and distinct actions: abuse of process and

malicious use of process.

> The crux of an abuse of process claim is the "improper use of process after it has been issued, that is, a perversion of it." *McGee v. Feege,* 517 Pa. 247, 535 A.2d 1020, 1023 (Pa.1987) (citations omitted).  Under Pennsylvania law, "abuse of process" and "malicious use of process" are similar to, but ultimately distinct from one another. *See, e.g., id.*  The critical difference between the two claims is that "[m]alicious use of civil process has to do with the wrongful initiation of such process, while abuse of civil process is concerned with a perversion of a process after it is issued." *Id.* (citations omitted).

*Kauffman v. Barbagello*, 2013 WL 6388487, \*14 (M.D. Pa. 2013).  As such, while the term

"process", when used in the tort of abuse of process "'has been interpreted broadly, and

encompasses the entire range of procedures incident to the litigation process," including

discovery proceedings, the noticing of depositions and the issuing of subpoenas, *Rosen,*

627 A.2d at 192 (quoting *Nienstedt v. Wetzel,* 133 Ariz. 348, 352 (1982)), it cannot be

extended to include actions by Defendants in merely referring a matter to a district attorney.

Plaintiff's claim is based on the alleged wrongful attempted *initiation* of an action against

her, not on the *perversion* of a legal process already underway.  As such, Snook cannot

sustain a claim for abuse of process and the Court will dismiss this Count with prejudice.

## V. CONCLUSION

For the foregoing reasons, the court will grant Defendant Knepp's Motion to Dismiss

Plaintiff's Amended Complaint (Doc. 11).  A separate Order follows.

Robert D. Mariani
United States District Judge

13